IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DR. MARC L. KOZAM                    *
d/b/a MLK SOFTWARE, et al.
                                     *
          Plaintiffs
                                     *
          vs.                        CIVIL ACTION NO. MJG-04-1787
                                     *
PHASE FORWARD INCORPORATED,
et al.                               *
          Defendants
*        *        *        *        *        *        *        *        *

MEMORANDUM AND ORDER
RE PATENT CLAIM CONSTRUCTION

In this case, Plaintiffs Dr. Marc L. Kozam ("Kozam") and

Datasci, LLC. ("Datasci") sue Defendants Phase Forward Inc.

("Phase Forward") and Quintiles, Inc. ("Quintiles") alleging

infringement of claims 11, 12, 14, 16, 25, 27, 29 and 30 of

United States Patent No. 6,496,827 ("the Patent"), "Methods

and Apparatus for the Centralized Collection and Validation of

Geographically Distributed Clinical Study Data with

Verification of Input Data to the Distributed System."

Pursuant to the Scheduling Order, the parties have filed

materials relating to what they have identified as claim

construction issues.  The Court has held a hearing regarding

claim construction issues and has had the benefit of the

arguments of counsel.

The Court now issues its claim construction decision.  In so doing, the Court is providing its construction of certain terms in the claims at issue in light of the position of the United States Court of Appeals for the Federal Circuit with respect to claim construction.  As stated in <u>Chef America, Inc. v. Lamb-Weston, Inc.</u>, 358 F.3d 1371, 1374 (Fed. Cir. 2004):

> This court [ ] repeatedly and consistently has recognized that courts may not redraft claims, whether to make them operable or to sustain their validity. [Citations omitted.]  Even "a nonsensical result does not require the court to redraft the claims of the [ ] patent. . . ." [citation omitted]  Thus, in accord with our settled practice we construe the claim as written, not as the patentees wish they had written it.

In this Order the Court does not resolve issues relating to infringement, validity, <u>etc.</u>, which may be affected by the Court's claim construction and likely will be addressed in the summary judgment phase of the case.  Rather, the Court presents, for the guidance of the parties as the case progresses, its construction of certain terms used in the claims in the context of the Patent.

I.  <u>GENERAL PRINCIPLES</u>

The construction of patent claims is a matter for the Court.  <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370, 390 (1996).  In the process of claim construction, the focus is upon what a person of ordinary skill in the pertinent art would have understood to be the meaning of the claim language.  <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 986 (Fed. Cir. 1995) (<u>en banc</u>), <u>aff'd</u>, 517 U.S. 370 (1996).  The Court must first look at the basic evidence of record, namely, the language of the Claim, the specification, and the prosecution history.  <u>Insituform Tech., Inc. v. Cat Contracting, Inc.</u>, 99 F.3d 1098, 1105 (Fed. Cir. 1996), <u>cert. denied</u> 526 U.S. 1018 (1999).  The Claim language itself defines the scope of the Claim.  Therefore, "a construing court does not accord the specification, prosecution history, and other relevant evidence the same weight as the claims themselves, but consults these sources to give the necessary context to the claim language."  <u>Eastman Kodak Co. v. Goodyear Tire & Rubber Co.</u>, 114 F.3d 1547, 1552 (Fed. Cir. 1997) (overruled on other grounds).

Patent claims may include limitations written in "means plus function" terms such as "means for entry of information."  As expressed in the statute, "[a]n element in a claim for a

combination may be expressed as a means or step for performing
a specified function without the recital of structure,
material, or acts in support thereof. . ."  35 U.S.C. §112 ¶6.
When a limitation is expressed in terms of "means plus
function", it should be construed to "cover the corresponding
structure, material, or acts described in the specification
and equivalents thereof."  Id.  Accordingly, a "means plus
function" limitation essentially incorporates within the
literal infringement analysis the doctrine of equivalents.


II.  DISCUSSION

    a.  The Patent and Claims at Issue

    As stated in the Patent disclosure,

> "The invention provides for a method of
> gathering data that provides interactivity
> and uses an existing wide area network in
> the collection of data, while providing
> high quality data collection with immediate
> validation of data."

Thus, for example, a medical researcher in Baltimore seeking
data as to a certain procedure, would want to receive, store,
and utilize data from a number of hospitals around the world.
At each remote location, for example, the Mayo Clinic, a
physician performing the procedure on patient X would cause
relevant data, e.g., age, weight, blood type, reaction, etc. -

to be entered into a computer for transmission to the
researcher via a wide area network.

The invention provides for verification of the data as
entered, for example, by comparison of the data with designed
parameters.  Thus, there would be rejection or a query, if the
input data reflected age six months and weight of 120 pounds.
The invention also provides for validation at the researcher's
site prior to acceptance in the data base for such purposes as
to avoid duplicative entries.

The parties seek the Court's construction of the terms in
the claims at issue highlighted below:

    11.  A computer-based system to gather, transmit, and
         store geographically distributed information
         comprising:

             input means for entry of
         information at a remote site; an
         information center having
         receiving means for receiving and
         storing the information;
             transmission means for
         transmitting the entered
         information to the receiving
         means from the remote site input
         means;
             first verification means at the
         remote site for verifying the
         information for accuracy as the
         information is being entered with
         the input means;
             second verification means at the
         information center for verifying
         the information received from the
         remote site input means by

5

comparing the information with
information previously stored at
the information center;

wherein at least one of the first
verification means and the second
verification means comprises means for
verifying the information for accuracy
as clinical trial data against a
predetermined clinical trial data
variable.

12. The apparatus in accordance with claim 11,
wherein both of the first verification means and
the second verification means comprise means for
verifying the information for accuracy as
clinical trial data against a predetermined
clinical trial data variable.

* * *

14. The apparatus of claim 13, wherein the
transmission means comprises a browser running
in the computer.

* * *

16. The apparatus of claim 15, wherein the
transmission means further comprises a wide area
network connecting the server and the computer.

* * *

25. A computer system for clinical trial management
of centralized collection of geographically
distributed information, comprising:

a remote site computer having a
browser with a first data
verification module for verifying
data entered at the remote, site
computer;

a transmission medium coupled
to the remote site computer; and
a central computer coupled to
the transmission medium, and
having a database and a second
data verification module for

6

verifying data received from the
remote site computer;
  wherein at least one of the
first verification module and the
second verification module
comprises means for verifying the
information for accuracy as
clinical trial data against a
predetermined clinical trial data
variable.

* * *

27. The computer system in accordance with claim 25,
wherein both of the first verification module
and the second verification module comprise
means for verifying the information for accuracy
as clinical trial data against a predetermined
clinical trial data variable.

29. A web-enabled clinical trial management system
for gathering, transmitting, and storing
geographically distributed information
comprising:        input means for
                   entry of
                   information at a
                   remote site;
    an information center having
receiving means for receiving and
storing information;
  transmission means for
transmitting the entered
information to the receiving
means from the remote site input
means;
  first verification means at the
remote site for verifying the
information for accuracy as the
information is being entered with
the input means; and
  second verification means at
the information center for
verifying the information
received from the remote site
input means by comparing the
information with information

7

> previously stored at the
> information center;
>    wherein at least one of the
> first verification means and the
> second verification means
> comprises means for verifying the
> information for accuracy as
> clinical trial data against a
> predetermined clinical trial data
> variable.

30. The system in accordance with claim 29, wherein
both of the first verification means and the
second verification means comprise means for
verifying the information for accuracy as
clinical trial data against a predetermined
clinical trial data variable.

B. <u>Term Construction</u>

   1. <u>First Verification Means (Claim 11)</u>

In regard to the term "first verification means", the

parties disagree only as to whether the term should be

construed as covering "software" [without modification] that

perform the described function or as covering only software of

the type described in the specification.  Tr. 38.[1]

As noted above, a means plus function limitation is to be

construed to cover the "corresponding structure . . .described

in the specification and equivalents thereof."  35 U.S.C. §112

¶6.  The essential question is what is the "structure . . .

described in the specification."  The Court concludes that in

---

[1] Tr. references are to the transcript of the Claim
Construction hearing held on May 20, 2005.

8

the context of the Patent, and the relevant time frame,[2] the

term "software" was so broad and general as to provide no

limitation at all in respect to a claim for a "computer-based

system."  Whatever might be the meaning in other contexts, in

the Patent at issue, the "structure . . . described in the

specification" should be neither more less than the

description presented in the specification.[3]

    The specification states:

        In particular, the invention uses
        [software] programming language that is:
        optimized for use with browsers; suited for
        interactive applications; platform
        independent; relatively concise; and
        downloadable through a browser.

Patent, Col. 4, lines 30-34

    If this were the only structure description it would be

so general as to provide no meaningful guidance for one

seeking to practice the invention.  However, the specification

further states:

        The embodiment illustrated provides for two
        separate validation/verification operations
        represented by interface filter plug-in
        block 7 and interface filter scripts block

---

    [2] Be it 1998 when the application was filed or 2002 when
the Patent issued.

    [3] Indeed, if the specification had merely referred to
"software [without modification]" there may well have been
issues raised in the Patent Office as to the adequacy of the
disclosure.

> 8.  A verification/validation is provided
> by interface plug-in block 7 at the remote
> site computer 2, and may be implemented as
> an add-on party of browser 3.

Id. at Col. 5, lines 61-66.

At this level of specificity[4], there is meaningful "structure" described.  Accordingly, the Court will utilize the claims construction proposed by Plaintiffs to the extent agreed upon by Defendants, and, for the word "software", will utilize the description presented in the specification.

The Court notes Plaintiffs' claim differentiation argument based upon the fact that Claim 18, depending from Claim 11 claims the apparatus of Claim 11[5] "wherein the first verification means comprises an interface plug in, including a filter."  However, Claim 18 is, in fact, narrower than Claim 11.  There is no reference in Claim 18 to the equivalents of the specific structure referred to in Claim 18 while Claim 11 covers the specific structure plus equivalents.  See Medtronic, Inc. v. Advanced Cardiovascular Systems, Inc., 248 F.3d 1303, 1311 (Fed. Cir. 2001).  Moreover, the reference in the dependent claim to the structure described in the

---

[4]  At argument, Plaintiffs' stated that the "structure that we're talking about is that filtering software."  Tr. 75.

[5] Claim 18 refers to Claim 12 that, in turn, depends from Claim 11.

10

specification does not add any additional structure description to the specification.  Indeed, one reading the Patent for described structure will find only a description of software using an interface plug-in, including a filter.

Furthermore, there is no merit to Plaintiffs' contention that the defense wrongly seeks to limit the claims to the disclosed preferred embodiment.  The only embodiment in the specification is labeled as a "preferred" embodiment.  That certainly indicates that there might be another embodiment but does not describe it.  Accordingly, the means plus function claim limitation is construed by reference to the described structure and the fact that the specification labels it as "preferred" does not broaden the scope of described structure for means plus function analysis.

Accordingly, the term "first verification means," is construed as:

> Software, as described below, that is used for verifying information [at the remote site] for accuracy as the information is being entered, and equivalents thereof.  The said software uses a programming language optimized for use with browsers, suited for interactive applications, platform independent, relatively concise and downloadable through a browser and comprises an interface plug-in, including a filter.

Of course, the scope of the construed limitation includes the equivalents of the described structure.

### 2.   Second Verification Means (Claim 11)

The term "second verification means" is construed in the same manner as "first verification means."

The defense contends that the Court should include as an additional limitation on "second verification means" the requirement that the verification occur prior to storing the information in the data base.  The defense is, however, seeking to inject an issue as to the function into the definition of the "means."

There is no doubt that a function of the second verification means is to compare information received from the remote site with information previously stored at the information center.  Thus, there is a difference in the respective functions described in the Claim for the first and the second verification means as follows:

| FIRST VERIFICATION MEANS | SECOND VERIFICATION MEANS |
| --- | --- |

| | |
|---|---|
| Function in claim - verifying information [at the remote site] for accuracy as the information is being entered. | Function in claim - verifying [at the information center] the information received from the remote site . . . by comparing the information with information previously stored at the information center |
| Specification - verifies information as it is entered in [the] remote site computer.  Patent, Col. 5, lines 64-65 - Col. 6, line 2 | Specification - to verify information prior to it being committed to and stored in the database at the . . . information center.  Patent, Col. 6, lines 2-4 |

The claim limitation is for structure described in the specification that performs the function stated in the Claim. For both the first and second verification means, the limitation is construed, as discussed above, to be software of the type set forth in the foregoing definition that performs the function described in the claim (and equivalents of such software).  The claim expresses the function as verification by comparison without reference to whether the verification is prior to, during, or after commitment to and storage in the data base.

The Court is not, in this Claim Construction phase, addressing the scope of equivalents or any issues that may arise in an infringement or validity context by virtue of the difference between the claimed function and the described structure in the specification or by the differences in

13

function and structure in regard to the first and second

verification means[6].  These, and other matters that may be

raised hereafter shall be addressed in due course as

necessary.


### 3.  Transmission Means (Claim 11)

It appears agreed (Tr. 84) that the term "transmission

means" should be construed consistent with the specification[7]

as:

> a browser, either installed in the remote
> site computer or in a remote site server
> that connects to a wide area network, such
> as the internet and World Wide Web.


### 4.  Wide Area Network (Claim 16)

Claim 16 states:

> The apparatus of claim 15, wherein the
> transmission means further comprises a wide
> area network connecting the server and the
> computer.

At the hearing, the parties agreed upon a construction

that the Court accepts. (Tr. 114-116)  Accordingly, the term

"wide area network" is construed as:

---

[6] Note, for example, the use of the term "both of" in
Claim 12.

[7] Patent, Col. 5, lines 39-45.

A communication network that connects
geographically separated areas, including
the Internet and World Wide Web.


5.    Transmission Medium (Claim 25)

Claim 25 states:

A computer system for clinical trial
management of centralized collection of
geographically distributed information,
comprising:
                * * *
[A] transmission medium coupled to the
remote site computer;

As discussed at the Claim Construction hearing, the

parties agreed with the Court's construction of the term

transmission medium as

a structure that allows or facilitates the
transmitting of information to and from a
remote site computer, including the
Internet.

(Tr. 104).


6.    Second Data Verification Module (Claim 25)

Claim 25 states, in relevant part:

A computer system for clinical trial
management of centralized collection of
geographically distributed information,
comprising:
                * * *
. . . the second data verification module
for verifying data received from the remote
site computer. . .


15

The parties debate whether the foregoing constitutes a means plus function limitation.

Plaintiffs contend that there is a rebuttable presumption that the absence of the word "means" indicates the absence of a means plus function claim.  Plaintiffs refer to a case[8] in which the word "circuit" is a claim was held, in context, to present sufficient structure to avoid treatment as a means plus function claim.  Plaintiffs, however, acknowledge that the word "module" is "well known in the art as a software component.  That's all it means."  Tr. 90.

The Court concludes that the word "module," in context, refers to a part (or component) of a larger software program.  The term "module", therefore, expresses only that there is a claim limitation for a part of a software program that verifies data.  There is no meaningful structure described.  As stated in an analogous context in the unpublished decision[9] of the Federal Circuit in <u>Ranpak Corp. v. Storopak, Inc.</u>, No. 98-1009, 1998 U.S. App. LEXIS 16348 (Fed.Cir. July 15, 1998)

---

[8]      At the hearing, Plaintiffs' counsel referred to the decision as "this Leading Edge Technology case which came out in December." Tr. 95.  The Court could find no such decision but, since the defense did not disagree that there was such a case, assumes that there is a decision in some case so holding.

[9]    Cited not as binding precedent, but as a persuasive quotation.

16

"settable control module [in a claim] merely sets forth the same black box as settable context means without recitation of structure for providing the same specified function.  Id. at *6.  See Altiris,Inc. v. Symantec Corp., 318 F.3d 1363, 1375-76 (Fed. Cir. 2003) (claim element referring to first and second "set of commands" was to be treated as a means plus function claim under § 112(6) because the claim did not recite sufficient structure to perform the entirety of the claim function.

The Court concludes that, in the context of the Patent Claim at issue, the term "second data verification module" is construed as the same as "second data verification means." Accordingly, the subject limitation is subject to § 112 ¶6 as a means plus function limitation and has the same construction as "second data verification means."


        7.   Web Enabled (Claim 29)

Claim 29 refers to:

        29.  A web-enabled clinical trial
        management system for gathering,
        transmitting, and storing geographically
        distributed information.

17

The defense is concerned about a limitation[10] to Internet use that could narrow the claim so as to avoid certain potential prior art.  However, the parties presented constructions for "web enabled" that did not appear to have any meaningful difference.

| Plaintiffs | Defendant |
|---|---|
| Capable of using the Internet or the World Wide Web, or being accessible by users through the Internet or the World Wide Web, or being capable of exporting data in a way that can be viewed on the Internet or the World Wide Web.  Pl Proposed Claim Construction. | Equipped with hardware or software that allows it to communicate or transmit information over the Internet.  Tr. 108. |

At the hearing the parties reached agreement on a construction with which the Court agrees. (Tr. 110-11).  The Court, therefore, construes the term "web-enabled" to mean:

> Having software and/or hardware that allows the transmitting or communicating of information over the Internet or the World Wide Web.

III. <u>CONCLUSION</u>

---

[10]  The Court is not now addressing whether the use of "web-enabled" in the preamble to Claim 29 limits the size of the Claim.  <u>See</u> <u>Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc.</u>, 246 F.3d 1368, 1376 (Fed. Cir. 2001)

For the foregoing reasons, the Court concludes the
following with regard to the construction of the Claim terms
placed at issue:

1.  The term "first verification means," is
    construed as software, as described below, that
    is used for verifying information [at the remote
    site] for accuracy as the information is being
    entered, and equivalents thereof.  The said
    software uses a programming language optimized
    for use with browsers, suited for interactive
    applications, platform independent, relatively
    concise and downloadable through a browser and
    comprises an interface plug-in, including a
    filter.

2.  The term "second verification means," is
    construed as software, as described below, that
    is used for verifying [at the information
    center] the information received from the remote
    site . . . by comparing the information with
    information previously stored at the information
    center. The said software uses programming
    language optimized for use with browsers, suited
    for interactive applications, platform
    independent, relatively concise and downloadable
    through a browser and comprises an interface
    plug-in, including a filter.

3.  The term "transmission means" is construed as a
    browser, either installed in the remote site
    computer or in a remote site server that
    connects to a wide area network, such as the
    internet and World Wide Web.

4.  The term "wide area network" is construed as a
    communication network that connects
    geographically separated areas, including the
    Internet and World Wide Web.

5.  The term "transmission medium" is construed as a
    structure that allows or facilitates the
    transmitting of information to and from a remote
    site computer, including the Internet.

19

6.   The term "second data verification <u>module</u>" is
     construed as the same as "second data
     verification <u>means</u>."

7.   The term "web-enabled" is construed as having
     software and/or hardware that allows the
     transmitting or communicating of information
     over the Internet or the World Wide Web.

8.   By August 26, 2005 Plaintiffs shall either
     advise the Court that no party wishes a stay of
     the case to explore settlement and/or to change
     the scheduling of further proceedings or arrange
     a telephone conference to discuss such matters.


SO ORDERED, on <u>Tuesday, August 16, 2005</u>.




                    _____/ s /_____
                      Marvin J. Garbis
                 United States District Judge